UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )  )  v.                                                         )  )  AARON NATHAN INGRAM           )  )  Defendant.                                   ) | Cause No. 1:04-CR-50 |

## OPINION

This cause is before the court upon a request for downward departure from the sentencing guidelines made by Defendant, Aaron Nathan Ingram, ("Ingram") at the sentencing hearing held on April 15, 2005. An evidentiary hearing was held on that date and the parties were ordered to file sentencing briefs related to the issues presented. In its brief, the Government requested a further evidentiary hearing which was held on July 18, 2005. The court then ordered supplemental sentencing memoranda from the parties. The last of these memoranda was filed on August 12, 2005. For the following reasons, the court does not find Ingram's request for a departure well-taken.

## FACTUAL BACKGROUND

On August 9, 2004, the Government filed an information charging Ingram with a violation of 18 U.S.C. §1841 (mail fraud) and 18 U.S.C. §892 (forfeiture). Subsequently, Ingram appeared before the magistrate judge, waived grand jury indictment and pled guilty, without the benefit of a plea agreement, to the information. Thereafter, the probation officer prepared a presentence investigation report wherein Ingram's total offense level based upon the United States Sentencing Guidelines was calculated to be 19 and his criminal history was 1. These calculations, in turn, led to a guideline range for imprisonment of 30 to 37 months. Ingram did plead guilty promptly and

1

provide a recitation of at least some of his criminal activity. However, the probation officer adjusted Ingram's offense level two levels for acceptance of responsibility and noted that while Ingram may qualify for an additional one level adjustment, that was dependent upon the Government's filing of a motion pursuant to U.S.S.G. §3E1.1(b). The Government did not file such a motion prior to the original sentencing date nor did the Government, as Ingram anticipated, file a motion for departure based upon substantial assistance as set forth in U.S.S.G. §5K1.1. At the initial sentencing hearing, however, the Government orally moved pursuant to §3E1.1(b) for an additional single level reduction for acceptance of responsibility which the court granted. With that reduction, Ingram's total offense level is 18, his criminal history category is I and his advisory guideline range is 27 to 33 months. Ingram now seeks a four level downward departure based upon substantial assistance he believes he provided to government authorities.

The particulars of Ingram's mail fraud are detailed in the presentence report, paragraphs 10-29. Because the crux of Ingram's present request relates to his conduct after his arrest, it suffices to say that Ingram was involved in a scheme to sell cellular telephones he stole from his employer, Centennial Wireless, to a third party corporation, RMS Communications Group, Inc. ("RMS"). In all, Ingram stole 2,085 cellular telephones and sold them to RMS at a profit of $274,560.00. As is evident from the mail fraud charge in the information, Ingram utilized the mail to facilitate his scheme.

Ingram was arrested on May 6, 2004. On May 25, 2004, Ingram presented for an interview with Detective Craig Robison ("Det. Robisono") of the New Haven Police Department and Detective Jim Seay of the Fort Wayne Police Department. A videotape of the interview has been filed by the parties as evidence. In the videotape, Ingram, as he contends, provides a lengthy

2

discussion of his criminal activity.  The court has reviewed the videotape and Ingram does answer questions posed to him by the detectives and describes his criminal activity in some detail.  For instance, Ingram implicates an individual named Christopher Myers in the theft of the cellular phones from the Centennial warehouse and he told detectives that his contact at RMS was Aaron Harris ("Harris").  Ingram further indicated that he rented a U-Haul truck and a storage facility to transport and hide the phones he stole.  He also identified individuals named Shepherd and Travis as the occupants of the U-Haul and the individuals who removed the cellular telephones, at his direction, from the warehouse. (Robison Test. at 31).

Despite having provided this information during the interview, Det.. Robison testified that the information provided did not substantially assist the police in investigating the case.  Indeed, Det. Robison testified that some of the information Ingram provided was already known to investigators and Ingram omitted information which had potential value to investigators.  For instance, Ingram did not mention his former girlfriend, Christine Rathburn ("Rathburn"), or that she had possession of some of the proceeds from his cellular phone sales to RMS during the interview.  This information was supplied nearly a year after the initial interview, in February 2005. (Testimony of Restituto Loran, at 9). Moreover, it became known to investigators that Ingram asked his brother, Isaac, to fabricate information to investigators regarding Rathburn and to "go along" with a story supplied by Ingram (Loran Test. at 9-10).  Ingram also mislead investigators to believe that two persons from Ohio had participated in the theft of the telephones when, in fact, they did not. (Loran Test. at 7-8).  Likewise, Ingram did not implicate Harris directly in the scheme nor did he indicate that Harris knew that the telephones RMS was receiving were stolen.  Later, on the day before his original sentencing date, Ingram revealed an email he received on January 28, 2004 from Harris

3

which, in fact, implicated Harris in the scheme. (Dfdt's Exh. B, July 18, 2005 Hearing). Given these facts, the Government now contends that Ingram provided neither immediate or helpful assistance so as to aid them in investigating the entirety of his scheme.

A district court may not depart pursuant to U.S.S.G. § 5K1.1 based upon a defendant's substantial assistance to the government absent a motion by the government requesting departure on that basis. *See Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992); *United States v. Forney,* 9 F.3d 1492, 1499 (11th Cir.1993).[1] Federal courts have authority to review a prosecutor's refusal to file a substantial assistance motion only if the refusal was based upon an unconstitutional motive, such as racial or religious discrimination. *Wade,* 504 U.S. at 185-86, 112 S.Ct. at 1843-44. The defendant must make a "substantial showing" of an unconstitutional motive before having a right to discovery or an evidentiary hearing. *Wade,* 504 U.S. at 186.

Here, Ingram concedes that this court is in no position to review the Government's refusal to file a request for a §5K1.1 since he has presented no evidence of an unconstitutional motive by the Government. Instead, Ingram asks this court to consider his assistance in formulating a "reasonable sentence" as is required under *Booker v. United States,* 125 S.Ct. 738, 765-66 (2005) and to consider his assistance as a mitigating factor not adequately taken into account by the guidelines.

"The Supreme Court's decision in *Booker* requires the sentencing judge first to compute the guidelines sentence just as he would have done before *Booker,* and then--because *Booker* demoted the guidelines from mandatory to advisory status--to decide whether the guidelines sentence is the

---

[1] Even if such a motion was filed, the district court has discretion under § 5K1.1 to depart to the degree it found appropriate, regardless of the specific recommendation of the government. *United States v. Ollson,* 413 F.3d 1119, 1121 (10th Cir.2005).
1.

correct sentence to give the particular defendant." *United States v. Dean*, ___ F.3d ___, 2005 WL 1592960, *2  (7th Cir.(July 7, 2005)).  Once the advisory Guideline range is determined, *Booker* requires consideration of the following factors, set forth at 18 U.S.C. § 3553(a), in formulating sentences under the advisory Guidelines scheme: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed [treatment]; ⋯ (4) the kinds of sentence and the sentencing range established for ⋯ (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission ⋯; (5) any pertinent policy statement-(A) issued by the Sentencing Commission.  18 U.S.C. § 3553(a); *Booker,* 125 S.Ct. at 765-66.

In this case, Ingram contends that the assistance he provided to authorities is not adequately taken into account in the guidelines and thus, when considered in light of the §3553(a) factors, the undersigned should depart from the advisory guideline range so as to properly account for his assistance.  The problem with this argument is that Ingram cannot overcome the facts revealed at the sentencing hearing that his assistance was sporadic, incomplete, misleading, generally unhelpful, and that he omitted some key information that investigators could have utilized in prosecuting others involved.  Certainly, Ingram provided some information at the initial interview.  He did, as he contends, implicate himself in the scheme, inform investigators regarding the number of telephones involved, and indicate to whom they were sold.  And, it is true, that at some later point Ingram "fessed up" and provided investigators information that would have been helpful had they known

5

it from the outset. However, he did not do so from the beginning and thus, according to testimony at the sentencing hearing, once the information was received, too much time had passed to continue pursuing the others involved in the crime. (Loran Test. at 21). From the evidence presented at the sentencing hearing it is clear that Ingram told investigators only certain information (and inaccurate information at that) and then waited until the Government refused to file a substantial assistance motion on his behalf before he divulged additional information, most significantly, an email from an individual at RMS showing his knowledge that the cellular phones were stolen property. Under these circumstances, this court cannot conclude that Ingram's assistance was anything near the level it needed to be so as to warrant any departure for extraordinary assistance, much less a four level departure as he requests.

Given this conclusion and the considerations listed in the §3553(a) factors, a sentence within the advisory guidelines is appropriate and reasonable in this case. Indeed, the Seventh Circuit has recently indicated that "any sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), The Seventh Circuit further advised that while the rebuttable presumption is a deferential standard, *Id.* (citing cases)*,* "it will be a rare Guidelines sentence that is unreasonable*." Id.* Accordingly, the court intends to sentence Ingram within the advisory guideline range of 27 to 33 months. In formulating where in the guideline range to sentence Ingram, the court shall take into account the assistance he did provide to authorities despite the conclusion that the cooperation of Ingram was not so extraordinary so as to warrant a departure from the advisory guidelines. Ingram's request for a downward departure is therefore DENIED.

**CONCLUSION**

Based on the foregoing, Ingram's request for a downward departure is DENIED. A sentencing date shall be set by way of a separate minute entry. At the hearing, the court will hear argument from counsel as to where within the advisory guideline range of 27 to 33 months Ingram should be sentenced.

Entered: September 16, 2005

                                                         s/ William C. Lee  
                                                         United States District Court  
                                                         Northern District of Indiana